[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 11, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10198
Non-Argument Calendar
_____

D. C. Docket No. 06-22565-CV-FAM

RONALD A. WILLIAMS,

Plaintiff-Appellee,

versus

DANIEL SANTANA, Det., et al.,

Defendants,

ROBERT PARKER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 11, 2009)

Before BIRCH, HULL and FAY, Circuit Judges.

PER CURIAM:

Miami-Dade Police Director Robert Parker appeals the district court's denial of his motion to dismiss based on qualified immunity. Parker argues that he was entitled to qualified immunity because (1) he was acting within his discretionary authority, and (2) Williams failed to allege, in his complaint, that Parker personally participated in the alleged constitutional violation or that there was a causal connection between Parker's actions and the alleged constitutional violation. He also argues that his alleged actions did not violate clearly established law. For the reasons set forth below, we affirm.

## I. Background

Ronald A. Williams, proceeding pro se, filed a "Second Third Amended Complaint," alleging constitutional violations under 42 U.S.C. § 1983, in which he named as defendants Parker, several Miami-Dade County police officers, and Miami-Dade County. The only claim relevant to this interlocutory appeal is Williams's claim against Parker in his individual capacity.

In an amended complaint, Williams alleged that, on October 20, 2002, unknown Miami-Dade police officers approached him and his girlfriend at gunpoint, questioned them about a shooting, handcuffed them, and placed them in the backseat of a police car. The officers questioned him about a shooting, told him that he was under arrest, and transported him to a police station. Williams

2

contended that he was interrogated by Detectives Santana and Barazal about the shooting and that the detectives continued questioning him for hours, even after he asked for a lawyer. Williams stated that he refused to have his picture taken, at which point Santana "storm[ed] out [of] the room" and returned with an ammonium packet. Barazal placed him in a headlock while Detective Santana placed the ammonium packet under Williams's nose and in Williams's mouth. This caused Williams to vomit and foam at the mouth. Williams alleged that Barazal slapped him, punched him, knocked him to the floor, and kicked him before leaving the interrogation room.

Regarding the background of his allegations that Parker was on notice of Barazal's violent history, Williams alleged that, between July 6, 1998 and August 9, 2002, Barazal had a "history of violent, irregular behavior and disregard[] [for] citizen's [sic] constitution[al] rights." He asserted that Barazal received a written reprimand on September 13, 2000, for violating a prisoner's rights and conduct unbecoming of an officer. Williams also cited eight other incidents, including the case numbers of the incidents, involving the use of violence by Barazal, including two incidents that occurred in the eight months prior to Williams's encounter with Barazal. Williams noted that "one of these incidents had merit[] because it was sustained 1/ /03." He asserted that Barazal's September 13, 2000 written

3

reprimand, along with the other eight incidents, put Parker on notice of the need to improve Barazal's training and supervise Barazal more closely. Williams contended that, despite these prior incidents, the police department continued to give Barazal commendations and recommendations, and ultimately placed Williams in an interrogation room with Barazal.

Parker filed a motion to dismiss Williams's claim against him, arguing that (1) Williams's complaint failed to "meet the heightened pleading standard sufficient to overcome qualified immunity," (2) the complaint failed to explain the basis for imposing supervisory liability individually on Parker, and (3) Parker was entitled to qualified immunity. Parker argued that Williams's complaint failed to allege that (1) Parker "personally participated in the alleged constitutional violation," or (2) "there [wa]s a causal connection between [Parker's] actions and the alleged constitutional violation." He also asserted that Williams's complaint did not allege that Parker engaged in, directed, or knew of any unconstitutional conduct by his subordinates, and there was no allegation of widespread prior abuse that would have put Parker on notice of the need to better train or supervise his subordinates. Finally, Parker argued that his actions did not violate clearly established law.

The magistrate judge issued a report and recommendation, finding that

4

Parker was acting within the scope of his discretionary authority, and that Supreme Court case law, at the time of Williams's arrest, clearly established that a supervisor could be held liable under § 1983 for failing to adequately train or supervise a subordinate. The magistrate concluded that it was "premature to determine whether Parker may be not entitled to qualified immunity" and recommended denying Parker's motion to dismiss. Over Parker's objections, the district court adopted the magistrate's report and recommendation and denied Parker's motion to dismiss Williams's complaint.

## II. Law & Analysis

We review the denial of qualified immunity de novo, accepting the factual allegations in the complaint as true and construing the facts in the light most favorable to the plaintiff. Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003).

To be entitled to qualified immunity, a defendant must first establish that he was acting within the scope of his discretionary authority. Mathews v. Crosby, 480 F.3d 1265, 1269 (11th Cir. 2007), cert. denied, 128 S.Ct. 865 (2008). Once the defendant has established that he was acting within his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id. When evaluating a claim for qualified immunity, a court must determine (1) whether the facts alleged, viewed in the light most favorable to the

5

plaintiff, show that the officer's conduct violated a constitutional right, and (2) whether, under the facts alleged, there was a violation of "clearly established law." See Pearson v. Callahan, 555 U.S. __, 129 S.Ct. 808, 820-21, 172 L.Ed.2d 565 (2009). Courts are no longer required to address the two prongs of this test in any particular order. See id. (modifying Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

The district court found that Parker was acting within the scope of his discretionary authority, and neither party challenges this finding on appeal. Thus, the relevant inquiry becomes whether the facts Williams alleged show that Parker's conduct violated Williams's "clearly established" constitutional rights. See Pearson, 555 U.S. at __, 129 S.Ct. at 818.

A constitutional right is clearly established if

> its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

See Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) (internal citations omitted). The critical inquiry in determining whether law is "clearly established" is whether the defendant had "fair warning" that his

6

conduct was unlawful. <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1350 (11th Cir. 2002).

"[S]upervisors can be held liable for subordinates' constitutional violations on the basis of supervisory liability under 42 U.S.C. § 1983." <u>Mathews</u>, 480 F.3d at 1270. Specifically, "[s]upervisory liability under 42 U.S.C. § 1983 occurs when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." <u>Id.</u> (internal quotations omitted); <u>see also</u> <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990). An inmate can establish a causal connection by alleging that:

> 1) a history of widespread abuse put[] the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fail[ed] to do so; 2) a supervisor's custom or policy result[ed] in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

<u>Mathews</u>, 480 F.3d at 1270 (internal quotations omitted); <u>see also</u> <u>Brown</u>, 906 F.2d at 671 (noting that "[t]he causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."

7

Brown, 906 F.2d at 671.

Because Brown was decided in 1990, the law, at the time of the incident alleged in Williams's complaint, was clear that a supervisor could be held responsible under 42 U.S.C. § 1983 for constitutional violations committed by subordinates if the supervisor personally participated in the constitutional violation or if there was a causal connection between the supervisor's actions and the alleged constitutional deprivation. See id. Williams does not allege that Parker personally participated in the violations; thus, the issue before us is whether the complaint sufficiently alleged a causal connection between Parker's failure to act and the violations. Taking Williams's allegations as true, as we must do at this stage of the proceedings, see Dalrymple, 334 F.3d at 994, the numerous prior incidents involving Barazal's use of force were sufficient to put Parker on notice of misconduct that was sufficiently "obvious, flagrant, rampant and of continued duration" to require him to act. See Brown, 906 F.2d at 671; Danley v. Allen, 540 F.3d 1298, 1315 (2008) (noting that "[t]his Court has long recognized that supervisors are liable for the excessive force . . . of their employees where the supervisors received numerous reports of prior misconduct of that nature by those same employees and did nothing to remedy the situation"). Williams alleged that Barazal had a history of violence, irregular behavior, and violations of citizens'

8

constitutional rights between July 1998 and August 2002. He listed eight specific incidents involving Barazal's use of violence. Although Parker asserts that one of Barazal's reprimands was "sustained' in 2003, the facts alleged in Williams's complaint indicate that the violation actually occurred in 2002. Even though it is not clear how the other complaints against Barazal were resolved, the fact that eight claims of violence or deprivation of constitutional rights were lodged against Barazal between July 1998 and August 2002 indicates that Parker was on notice of a potential problem. See id. (noting that supervisor liability may be imposed where a supervisor received numerous reports of prior misconduct by a specific employee). Williams alleges that Parker failed to respond to these prior incidents of misconduct by providing Barazal with increased training or supervision; thus, Williams has alleged the necessary causal connection to hold Parker liable in his supervisory capacity. Because Barazal has alleged that Parker violated his clearly established constitutional rights, the district court did not err in denying qualified immunity at the motion to dismiss stage of the proceedings. Only time will tell if there is evidence to support these allegations. Accordingly, we affirm the court's denial of Parker's motion to dismiss.

**AFFIRMED.**

9